BANK OF STOCKTON, (PENDERGAST v.) See Case No. 10,918.

---

## Case No. 899.

### BANK OF TENNESSEE v. UNION BANK OF LOUISIANA.

[2 Amer. Law Rev. (1868,) 346.]

Circuit Court, D. Louisiana.

BANKS AND BANKING— COLLECTING AGENT—CONFEDERATE TREASURY NOTES — BILLS OF CREDIT —CONTRACTS—COERCED PAYMENTS.

[1. Treasury notes issued by the Confederate government, and circulated as money, are bills of credit, within the meaning of the constitution, and cannot be a legal consideration to support a contract.]

[Disapproved in Bailey v. Milner, Case No. 740.]

[See, contra, Planters' Bank of Tennessee v. Union Bank of Louisiana, 16 Wall. (83 U. S.) 483.]

[2. A balance of account arising on dealings in such notes, both parties consenting thereto, cannot be recovered.]

[See Nordlinger v. Vaiden, Case No. 10,296.]

[3. A collecting agent, who, without authority from his principal, received Confederate notes, is liable to his principal for the amount which should have been collected; and the fact that such principal had himself collected such notes for such agent, and knew that such notes were largely circulated in New Orleans, where such agent lived, is not proof of authority to such agent to make collections in Confederate currency.]

[See, contra, Planters' Bank of Tennessee v. Union Bank of Louisiana, 16 Wall. (83 U. S.) 483.]

[4. While the Union troops occupied New Orleans, circulation of Confederate notes was prohibited, and thereafter banks having in their possession funds belonging to enemies were ordered to turn them over to the military authorities. Held, that a payment so made under coercion was valid, and released the bank from all claims by the owner of such funds, but a payment in Confederate notes, unless such notes were the funds standing on the bank books to the credit of such enemy, was invalid.]

[See, contra, Planters' Bank of Tennessee v. Union Bank of Louisiana, 16 Wall. (83 U. S.) 483.]

[5. When a deposit is received or a collection is made in Confederate notes with the knowledge and approval of the principal, express or implied, and the military authorities decided that the payment to them (the principal being an enemy) should be made in Confederate notes, such payment released the bank from all claims arising on account of the amount so paid.]

[See, contra, Planters' Bank of Tennessee v. Union Bank of Louisiana, 16 Wall. (83 U. S.) 483.]

At law. This was an action to recover a balance of $22,739, due the plaintiffs at the time of the occupation of New Orleans by the United States forces in 1862. General Butler prohibited the circulation of Confederate notes, and required the banks, including the defendants, to pay their depositors in United States legal-tender notes or specie, or in their own notes, redeemable in legal-tender notes. In 1863, by general order No. 202, General Banks directed the banks having in their possession funds belonging to enemies, &c., to turn over the same to the chief quartermaster of the department. The amount due the plaintiffs was so transferred by the defendants, together with funds of the same description belonging to other parties. All these funds were in Confederate notes.

DURELL, District Judge, charged the jury in substance as follows:—

"If the defendants saw fit, without authority from the plaintiffs, to receive in payment of drafts and notes forwarded by the plaintiffs for collection, Confederate notes or any other notes, the illegality or nullity of such notes does not discharge the defendants for their liability as bankers charged with the business of collection.

"Even if the jury should find that the plaintiffs had collected notes in Confederate currency, that they had forwarded Confederate notes to defendants, and that they knew that Confederate notes were largely circulated in New Orleans, these facts would not constitute proof of authority from the plaintiffs to the defendants to collect in Confederate currency.

"That the delivery by defendants to the military authorities of Confederate notes to the amount of their indebtedness to plaintiffs from general funds of the bank would not discharge the defendants, if the jury were of the opinion that the Confederate notes so delivered were not the moneys or funds standing on their books to the credit of the plaintiffs.

"If the jury should be of opinion, from the evidence, that the defendants paid over the amount which they held to the credit of plaintiffs to the officers of the quartermaster's department, in obedience to special order No. 202, and under coercion, then and in that case such payment was valid, and released defendants from all further claims of the plaintiffs on that account.

"If the jury should find, from the evidence, that the amount claimed by the plaintiffs in this suit was received by the defendants in Confederate treasury notes, issued by the so-called Confederate government, then in rebellion and at war with the United States, and that Confederate notes were so received by the defendants as a direct remittance from the plaintiffs, or in payment of assets belonging to the plaintiffs and collected by the defendants, with their knowledge and approval, express or implied, in the notes afore-

said, and the officers of the quartermaster's department therefore decided that the payment under special order No. 202 should be made in Confederate treasury notes, and that it was so made accordingly, then such payment was valid, and released the defendants from all further claims of the plaintiffs on account of the amount so paid over.

"That, under the constitution of the United States, no state can enter into any treaty, alliance, or confederation, or emit bills of credit; that the formation of the government of the so-called Confederate States was unlawful, and the emission of bills of credit by such government was unlawful; that the Confederate treasury notes issued by said government and circulated as money were bills of credit within the meaning of the constitution, and therefore an unlawful issue; and that by the law of Louisiana and under the constitution of the United States, all dealing in such notes was unlawful, and all obligations arising therefrom or founded thereon, are also unlawful and without legal consideration.

"If the jury find that the balance of account claimed by plaintiffs arose from dealings in such Confederate treasury notes, remitted by plaintiffs to defendants, or received by defendants for the account of plaintiffs, with their consent and approval, then the claim of the plaintiffs is without lawful consideration, and the jury should find their verdict for the defendants."

The jury returned a verdict for the defendants.